560 F.2d 973
 77-2 USTC P 9673
 Milton LEWIS and Lollie B. Lewis, Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
Milton LEWIS, Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
Lollie B. LEWIS, Appellee,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
 Nos. 75-1545, 75-1643 and 75-1644.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 13, 1977.
 
 Ernest J. Brown, Asst. U. S. Atty., Internal Revenue Service Washington, D. C., argued, for appellant.
 Victor L. Walch, Los Angeles, Cal., argued, for appellees.
 Appeals from the Decisions of the United States Tax Court.
 Before GOODWIN and KENNEDY, Circuit Judges, and McNICHOLS,* District Judge.
 GOODWIN, Circuit Judge:
 
 
 1
 The Commissioner of Internal Revenue appeals from a judgment of the tax court allowing the taxpayer to deduct certain home maintenance and depreciation expenses.[1]
 
 
 2
 The facts are not in dispute. The taxpayer, Milton Lewis,[2] was executive vice president and later president of the Ralph M. Parsons Company (the Company), a world-wide engineering and construction firm with offices in Los Angeles, London, Bombay, New York, Paris, Frankfurt, and Liege. When the taxpayer joined the Company in 1949, he and Ralph Parsons (the sole shareholder of the Company) formulated a policy to try, to the greatest extent possible, to limit its work to negotiated, rather than bid, contracts. The Company policy required cordial working relationships with clients. To that end, the Company chose to entertain clients and prospective clients in a personal residence, rather than at restaurants and clubs. At the request of Parsons, the taxpayer's home was used for this entertaining from the time he joined the Company in 1949.
 
 
 3
 Until 1955, the taxpayer deducted on his tax return the entire cost of maintenance and depreciation for his home. The Internal Revenue Service administratively determined in 1955 that the taxpayer could deduct only 60% of those costs. The Company agreed to reimburse the taxpayer for 60% of the maintenance and depreciation costs of his home, and the taxpayer agreed to make his home available for Company entertaining. This agreement has been in force during the relevant tax years.
 
 
 4
 The Company became a major competitor in its field, and its gross revenues grew from $3,499,000 in 1950 to $230,159,000 in 1966. Company officials attributed this growth to the Company's ability to obtain negotiated rather than bid contracts, and the officials considered the Company's home entertainment policy essential in developing the client relationships that lead to negotiated contracts.
 
 
 5
 In 1963, the taxpayer was living in a penthouse apartment. During one of the Company parties, the apartment became overcrowded, and Parsons suggested that the taxpayer move to a house that could better accommodate the Company's entertainment policy. Parsons selected the site for the new house. The Company performed engineering studies and designed the house. The Company lent the taxpayer $300,000 with which to build it. The Company has prepared an 85-page operating manual for the lighting, heating, sound and other household systems. The house can seat 100 persons for dinner. The Company furnished maps to help clients find the house. The total cost of the house and its contents was $655,432. The taxpayer would not have a house this large were it not for the Company's entertainment policy. The taxpayer did not own any stock in the Company, nor did he own options to purchase the Company's stock during the tax years in issue.
 
 
 6
 The taxpayer and his secretary kept calendars which showed the use of the house for business entertaining. These calendars were admittedly incomplete. They showed only the dates on which the house was used and the names of the guests or the company for whom they worked. On any particular occasion the taxpayer might entertain both business and personal friends. The number of occasions when business guests were entertained at the house ranged from 24 to 35 per year.[3] Entertainment usually consisted of cocktails and dinner, through sometimes no dinner was served. The taxpayer hosted two parties for Company personnel each year. On his birthday he also gave parties which were attended by Company officers. The house was "available" to other Company officers for entertaining business clients, but the record is not clear on the volume of this type of entertainment.
 
 
 7
 Each year the taxpayer's accountant prepared a report of expenses to be submitted to the Company. An expense statement was prepared by the taxpayer's secretary, which was then submitted to the Company's treasurer. The treasurer went over the statement and discussed it with Parsons, and in due course the taxpayer received a check. The taxpayer had no authority to issue these checks to himself.
 
 
 8
 The Company reimbursed taxpayer for all his out-of-pocket entertainment costs (food, liquor, extra help, and the like). These items are not in issue here. The check for the 60% of the maintenance and depreciation expenses was issued for the preceding year. Because these expenses increased every year, the taxpayer, who is on a cash basis, claimed in his tax returns a deduction for the amount by which 60% of the maintenance and depreciation in any one year exceeded the reimbursement paid by the Company for the preceding year.[4]
 
 
 9
 The Commissioner challenged the taxpayer's returns for the tax years 1963-67 on the grounds that these deductions were improper. The Tax Court found for the taxpayer, and the Commissioner appeals.
 
 
 10
 Ordinarily, a taxpayer may not deduct the expense of maintaining a home. (Int.Rev.Code § 262). On the peculiar facts of this case, however, the tax court found that a portion of the expense of maintaining this home was deductible as an ordinary and necessary business expense under Int.Rev.Code § 162(a). Given the fact that the house was built at the Company's request and to its specifications, that the Company had a longstanding policy of home entertaining, and that the Company in fact used the home for business entertaining, the tax court's finding on this preliminary issue was correct.
 
 
 11
 The finding that the house was used for business purposes does not mean, however, that the taxpayer is entitled to deduct the full amount claimed. The house was also used as the taxpayer's residence, and, as noted, the expenses of maintaining a residence are not deductible, Int.Rev.Code § 262. Since § 162(a) requires that an expense be paid or incurred in the taxpayer's trade or business, the taxpayer here must make an allocation between his deductible business use and his nondeductible personal use. The taxpayer is also required to prove that his allocation is correct, if the Commissioner challenges it; and the taxpayer bears the burden of proving entitlement to all deductions. Rockwell v. Commissioner of Internal Revenue, 512 F.2d 882, 886 (9th Cir.), cert. denied, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). We hold that the taxpayer has not met this burden.
 
 
 12
 The tax court accepted more or less without question the taxpayer's allocation of 60% business usage. This figure was based upon the taxpayer's reimbursement agreement with the Company, negotiated in 1955. The taxpayer has not recently attempted to justify this allocation, either to the tax court or to the Company, on the basis of annual usage. The taxpayer maintains that 60% is an appropriate figure because: (1) he negotiated the 60% figure with local revenue agents for a different dwelling in 1955, and (2) the house is always available for the employer's use, whatever the actual business usage may be.
 
 
 13
 We do not believe either argument provides an appropriate standard for this allocation. An agent's concession for one tax year does not bind the government for future years. Handelman v. Commissioner of Internal Revenue, 509 F.2d 1067 (2d Cir. 1975); Walker v. Commissioner of Internal Revenue, 362 F.2d 140 (7th Cir. 1966); Mertens, Law of Federal Income Taxation § 60.15 (Zimet Rev.). If availability were the standard, there would be no rational way to distinguish between the deductions of a taxpayer whose home is used once a year and those of a taxpayer whose home is used every weekend, so long as both were always available.
 
 
 14
 We do not understand the taxpayer to be contending that he expected the house would be used 60% of the time. If the 60% figure was based on the taxpayer's expectations, then the percentage is grossly inflated because the tax court noted that actual business usage was minimal. In making the allocation, the tax court should be guided by the actual use of the home for business purposes, not its availability for such use.
 
 
 15
 We are strengthened in this conclusion by the provisions and legislative history of Int.Rev.Code § 274. The legislative history shows that Congress intended to overrule the decision in Cohan v. Commissioner of Internal Revenue, 39 F.2d 540 (2d Cir. 1930), under which the court could estimate the amount spent for entertainment purposes once the taxpayer proved he was entitled to some deduction. Congress was clearly concerned about inflated expense accounts and the use of business deductions for personal expenses. See H.R.Rep.No. 1447, 87th Cong., 2nd Sess. (1962-3 Cum.Bull. 405); S.Rep.No.1881, 87th Cong., 2nd Sess. (1962-3 Cum.Bull. 707). The committee reports expressly reject availability as a standard for determining the amount of the deductions. See S.Rep.No.1881, supra at 31-32 (1962-3 Cum.Bull. at 737-738); H.R.Rep.No. 1447, supra at 22 (1962-3 Cum.Bull. at 426). Though we do not find § 274 controlling in determining how an allocation between business and personal use should be made, we note the Congressional policy of basing deductions on actual use rather than availability in a closely related area.
 
 
 16
 Both the parties and the tax court believe that this case is governed by § 274 and devoted considerable attention to the question of whether the taxpayer had or had not complied with the regulations under that section. It is true that certain expenses which meet the ordinary and necessary test of § 162(a) must further meet the substantiation requirements of § 274(d). Because the deductions claimed here are for entertainment expenses, the taxpayer must substantiate these expenses as required in § 274(d) in order to deduct them. The tax court found that § 274(d) and the regulations thereunder had been complied with.[5] Assuming without deciding that this holding is correct, the taxpayer still has to justify his allocation between business and personal use as a matter of proving his entitlement under § 162(a). In order to take these deductions, the taxpayer must meet the requirements of both § 162(a) and § 274. Nothing in the record supports the 60% allocation except the reimbursement agreement, and that agreement has little or no bearing on the problem. The Company might have decided that the taxpayer was entitled to compensation for the inconvenience of having his home available at all times. That does not make such compensation nontaxable.[6] The employer and the employee cannot, by agreement between themselves, convert part of the employee's compensation into a business expense for the employee. Because the tax court has not made a finding on the proper allocation for the business use of this home, we reverse and remand with instructions to make such an allocation.[7]
 
 
 17
 On remand, the tax court should consider the actual use of the home for business purposes. Our decision in Gino v. Commissioner of Internal Revenue, 538 F.2d 833 (9th Cir.), cert. denied, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 587 (1976), means that business use must be considered as a percentage of total available time, with no adjustments in available time for the periods the taxpayer was out of town.
 
 
 18
 Some of the guests at business parties were the taxpayer's personal friends and were not being entertained for business reasons. Suitable adjustments should be made for this personal entertaining.
 
 
 19
 Finally, there was evidence that other Company executives were also allowed to entertain business clients at the house. The record is unclear as to how often the other executives took advantage of this privilege, or whether these occasions were included in the taxpayer's figures. If they were not included, then the taxpayer ought to be given an opportunity to substantiate this business usage as required by § 274. If it is so substantiated, then this use by others should also be considered in making the allocation.
 
 
 20
 Reversed and remanded.
 
 
 
 *
 The Honorable Ray McNichols, United States District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 33 CCH Tax Ct. Mem. 283, 43 P-H Tax Ct. Mem. 266 (1974)
 
 
 [2]
 Milton's wife, Lollie, is a named party because she and Milton filed joint returns for tax years 1963-65 and 1967. In 1966 the Lewises filed separate returns, and Lollie claimed her share of the challenged deductions. For simplicity, Milton alone is referred to as the taxpayer
 
 
 [3]
 The taxpayer entertained for business purposes a total of 962 guests on 154 occasions during the years in question. The number of occasions, on an annual basis, is shown in the following table:
 Year Occasions
 1963 27 1964 34 1965 24 1966 34 1967 35
 
 
 [4]
 The expenses claimed, and the reimbursement paid the following year on an annual basis, were as follows:
 Year Amount
 1963 $11,534.62 1964 13,105.46 1965 13,557.20 1966 15,288.75 1967 22,118.75
 
 
 [5]
 The tax court believed that the taxpayer had made an adequate accounting to his employer within the meaning of Reg. § 1.274-5(e)(4). Under this Regulation, the taxpayer must account for the time and place of each entertainment, the business purpose of the entertainment, and the business relationship of the persons entertained, Reg. § 1.274-5(b)(3). The tax court found that the taxpayer had substantially complied with this Regulation. Since the Regulations provide that an employee who adequately accounts to his employer will not have to substantiate again to the Commissioner, Reg. § 1.274-5(e)(5), we think this Regulation might properly be read as applying only where the reimbursement paid to the employee is based on the employee's representations of how much he was out of pocket for the employer's purposes. Since the reimbursement in this case is based on a flat percentage, regardless of the actual use, the tax court might well have found that the taxpayer had not adequately accounted to his employer. If availability is not a proper standard for determining expenses under § 274 generally, as it clearly is not, we fail to see why it should be a proper standard for determining what is adequate accounting to an employer within the meaning of Reg. 1.274-5(e)(4)
 
 
 [6]
 We express no opinion on whether the reimbursement amounts would be deductible by the Company as compensation paid to an employee
 
 
 [7]
 In making this allocation, the tax court should consider the effect of Rev.Rul. 62-180, 1962-2 Cum.Bull. 52