LEONARD KOPOWSKI and DORIS KOPOWSKI, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kopowski v. Commissioner
Docket No. 10660-77.
United States Tax Court
T.C. Memo 1979-322; 1979 Tax Ct. Memo LEXIS 203; 38 T.C.M. (CCH) 1239; T.C.M. (RIA) 79322; August 20, 1979, Filed James R. Ehrle, for the petitioners. Joseph R. Peter and Robert R. Rubin, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $3,353.52 in petitioners' 1973 Federal income tax. Because of a concession, the remaining issues for determination are whether petitioners are entitled to deduct a portion of their expenses in maintaining a lakeside cottage and whether they are entitled to an investment credit with respect to equipment purchased for the cottage. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners, Leonard Kopowski and his wife Doris Kopowski, resided in Bay Village, Ohio, at the time they filed their *205 petition. Doris is a party only because petitioners filed a joint income tax return for 1973, thus Leonard will hereafter be referred to as petitioner. Since 1962 petitioner has been an executive vice-president of Tupperware Home Parties, a division of Dart Industries, Inc., and he has been associated with Tupperware for over 25 years. His wife, Doris, was not a Tupperware employee in 1973. Petitioner is in charge of Tupperware's Mid-Central Region which includes Michigan and Ohio and has from time to time included Illinois, Indiana, Kentucky, West Virginia, Pennsylvania, and Maryland. He is paid on an incentive basis, salary plus contingent compensation based on sales in his region. In 1970 petitioner acquired a lakefront cottage in Hubbard, Mich. The cottage had 5-1/2 bedrooms and a private beach, dock, and sun deck. By 1973 equipment at the cottage included furniture, miscellaneous items, three snowmobiles, a boat and trailer, and a "Blazer Truck" (all-terrain vehicle). One of the reasons petitioner acquired the cottage was to provide a relaxing environment for his sales people and associates at Tupperware so that he could discuss with them and benefit from their business *206 knowledge and past experiences. On his 1973 return, petitioner deducted as business entertainment expenses 50 percent of the following amounts incurred maintaining the Michigan cottage: [1]
Table 1 Description
Amount
Light $ 184.32
Telephone
117.12
Fuel
358.94
Insurance
382.00
Depreciation
7,281.25
Supplies & Maintenance
1,642.74
$9,966.37
50% for business =
$4,983.19
Approximately 40 percent of the depreciation claimed on the cottage was taken on the remodeled buildings and a retaining wall. Approximately 46 percent of the depreciation was taken on the three snowmobiles, the trailer and boat, its dock, and the "Blazer." In 1973 the cottage was occupied on 58 days. On 13 days, petitioner helped a contractor repair a beach front retaining wall washed out by a rainstorm. Petitioner claimed he was at the cottage vacationing with his family 22 days, and he claimed 23 days as days of business use, involving six sessions or gatherings which we number as "meetings" for convenience. The personal and claimed business days are set forth as follows: *207 [2]
Table 2 Use of cottage
Days involved
No. "business"
No. personal
Meeting #1
January 25, 26, 27, 28
4
Meeting #2
February 15, 16, 17, 18
4
Personal
May 11, 12, 13
3
Personal
May 26, 27, 28
3
Personal
June 1, 2, 3
3
Meeting #3
June 14, 15, 16
3
Personal
June 21, 22, 23, 24, 25
5
Meeting #4
June 26, 27, 28, 29
4
Meeting #5
July 11, 12, 13
3
Meeting #6
July 18, 19, 20, 21, 22
5
Personal
August 30, 31; September 1, 2
4
Personal
November 22, 23, 24, 25
4
Totals
23
22
Petitioner prepared in advance handwritten outlines of the planned recreation and the topics he intended to cover at each meeting, and he checked off or noted points as they were discussed. These handwritten notes were supplemented by summaries prepared for respondent during the course of this dispute and by petitioner's testimony at trial. Petitioner recorded days of personal use as such in his daybook, but the daybook was not made part of the record and petitioner admitted that he did not know whether *208 there might have been any other days of personal use. The events and circumstances of particular meetings insofar as they are relevant here may be briefly stated. Meeting #1, January 25-28: Petitioner and his family hosted a winter weekend at which Don and Pat Hemmings and their two children and Mike and Effie Lou McGhay were present. [3] The purpose of the weekend was to review, in "an informal relaxed atmosphere in which the mind is picked by an indirect and protracted discussion," [4] the Hemmingses' and McGhays' successful Tupperware distributorships so as to better understand their success. No business was discussed on the day they arrived, January 25.Discussions started at nine o'clock in the morning on January 26th and continued intermittently through the 28th. Meeting #2, February 15-18: Irv and Norma W. spent the weekend at the cottage for a "Distributor Get-Together." Problems associated with their distributorship were covered in discussions which started on the *209 morning of February 16 and were held off and on through the 18th.No business was was discussed on the evening of February 15, the day petitioner's guests arrived. Meeting #3, June 14-16: Petitioner's only guest was Phil Grasso, an executive vice-president from Tupperware's home office. Talks on all three days involved new products and some general planning and review. Meeting #4, June 26-29: Petitioner entertained Arnold and Claire DeBoer, a couple who had retired after operating a Tupperware distributorship which they had recently sold to their daughter and son-in-law. Discussions involved retrospections about the business and speculation about the future of the couple's children. The DeBoers told petitioner they were no longer involved themselves in the business or their former distributorship. Petitioner's handwritten notes do not indicate particular discussions for particular dates. [5]
Meeting #5, July 11-13: Petitioner had only one guest, Chuck Flaherty, a member of Tupperware's *210 home office staff. Although all business activity on July 11 transpired while fishing, a number of topics relating to planning and petitioner's sales area were discussed on July 11 and 12. On July 13 petitioner's guest left in the afternoon after a morning spent fishing on which no business discussions were held. Meeting #6, July 18-22: This five-day meeting was held with petitioner, Jack and Ruth Fix (retired Tupperware distributors), Bernice Huber (retired Tupperware distributor), and Bill Haines (who later married Bernice Huber) present. None of petitioner's guests had been active Tupperware distributors since 1969. The purpose of this meeting seems to have been largely retrospective. Business discussions were not scheduled for any particular day. [6]
*211 Insofar as is apparent from the record, petitioner's wife and three children accompanied him on each claimed business meeting. The atmosphere at the cottage was always relaxed and informal, and all the meetings included recreational activities appropriate to the location and season. The general purpose of meetings at the cottage was to encourage the Sales People in a promotional or in a fact finding way to * * * unwind in a relaxed atmosphere from their business and personal environment [so that petitioner and his wife] could share and learn from them and try to share with them the (successful and not so successful) experiences we have had over the years in direct selling. [7]
On petitioner's 1973 Federal income tax return, he deducted $4,983.19 as a promotion expense, computed according to table 1, supra. In addition, petitioner claimed a section 38 [8] investment tax credit of $243.47. [9] Both these amounts were disallowed by respondent in his statutory notice. *212 At trial the parties agreed that petitioner had also suffered a casualty loss during 1973 when a retaining wall at the cabin was washed out during a rainstorm and that the amount of the loss was $3,250.00.
OPINION Petitioner and his wife owned a lakeside retreat. Their 5-1/2 bedroom cottage was available year-round, sits in front of a private beach, and was equipped with three snowmobiles, a boat and its trailer and dock, and an all-terrain "Blazer" truck. During the tax year in question, the cottage was used both as a vacation home for petitioner and his family and as a relaxed environment in which petitioner could entertain and discuss his business with associates. We must decide (1) whether petitioner may deduct depreciation and other costs associated with the cottage as business expenses, and if so to what extent, and (2) whether petitioner is entitled to any investment tax credit under section 38 with respect to purchases made for the cottage. Respondent first contends pro forma that none of petitioner's claimed expenses are allowable under sections 162 and 167. Petitioner claims 50 percent of his expenses are so deductible.We think this threshold point is rather *213 easily addressed. Under section 162 petitioner is entitled to deduct as much of his expenses of maintaining the cottage as were ordinarily and necessarily incurred in furtherance of his trade or business. Secs. 1.162-9, 1.162-14, Income Tax Regs.; Commissioner v. Heininger,320 U.S. 467 (1943); Lewis v. Commissioner,560 F.2d 973 (9th Cir. 1977). As set forth in our findings of fact, it is obvious at least some portion of petitioner's use of the lake cabin was in furtherance of his trade or business. During at least parts of meetings numbered three and five (see table 2, supra) petitioner discussed the operations of Tupperware's Mid-Central Sales Region, for which he was responsible, with members of the Tupperware home office staff. Similarly, during at least some parts of meetings numbered one and two, petitioner spoke with three of his Tupperware distributors about the conduct of their business. Because petitioner's compensation was partly dependent on the efforts of the sales people in his region, at least some of the costs associated with these meetings would, under section 162, meet the "ordinary and necessary" test. See Walliser *214 v. Commissioner, 72 T.C.     (June 7, 1979). We therefore hold at least some part of petitioner's expenses relating to the cottage would be deductible under sections 162 and 167 unless otherwise disallowed under section 274.
The more difficult issues involve section 274. Section 274 operates to limit deductions that would otherwise be allowable under the Code with respect to certain entertainment expenses. Andress, Jr. v. Commissioner,51 T.C. 863 (1969). As applied to this case, section 274(a)(1)(B) disallows the deduction of expenses With respect to a facility used in connection with an activity referred to in subparagraph (A) ["of a type generally considered to constitute entertainment, amusement, or recreation"], unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business * * * The parties have framed the issues narrowly. It is agreed, and it is clear as well, the lake cottage constitutes an "entertainment facility" within the meaning of the statute and the regulations. Sec. 1.274-2(e)(2)(i), Income *215 Tax Regs.; S. Rep. No. 1881, 87th Cong., 2d Sess., 1962-3 C.B. 707, 737-739 (examples A and B). All of the equipment located at the cottage is conceded to be part of the facility. All of the costs incurred by the petitioner with respect to the cottage are conceded to be facility expenses. The respondent does not dispute the amounts of the expenses petitioner claims. Thus, we are asked to decide only (1) whether the facility's "primary use" was to further the petitioner's trade or business, and, (2) if so, whether all or any part of the expenses of the cottage were "directly related" to the active conduct of petitioner's business. We will first discuss the primary use test. Petitioner contends the primary use of the cottage was to further his business because he claims 23 days were days of business use and only 22 days were days of personal use. [10] Respondent contends January 25, February 15, all of meeting four (4 days), July 13, and all of meeting six (5 days) were not days of business use. Thus, respondent contends that because no more than 11 out of 45 days were days of business use, the primary use of the facility was not in furtherance of petitioner's trade *216 or business. For the reasons set forth below, we agree with respondent. Both parties rely on section 1.274-2(e)(4)(iii), Income Tax Regs., for the proposition that if more than 50 percent of the calendar days of actual use are days of business use, then a taxpayer is deemed to have established the facility was used primarily to further the taxpayer's business.[11] For purposes of the foregoing test, the regulation goes on to provide that any calendar day on which "substantial business discussions" [12] occur shall be counted as a day of business use, notwithstanding concurrent personal use by the taxpayer or his family and friends. This quite liberal regulation serves the administrative purpose of allowing a taxpayer to adequately substantiate the business use of a facility without having to account for every minute spent. The 50 percent rule likewise allows administrative determinations to be based on a sensibly limited showing. *217 Petitioner has not satisfied the 50 percent of the calendar days of use test set forth in respondent's regulations.First, petitioner does not dispute that no substantial business discussions were held on January 25 (first day of meeting one), February 15 (first day of meeting two) and July 13 (last day of meeting five). Second, petitioner's contemporaneous notes do not establish on what days or how many business discussions were held during meetings four and six. Third, even if we were to find, and we do not, that some discussions were held on every day of the fourth and sixth meetings, it would nevertheless be clear these would not constitute "substantial and bona fide business discussions" within the meaning of section 1.274-2(d)(3)(i)(a), Income Tax Regs. In that section, a "substantial and bona fide business discussion" is defined as one in which "the taxpayer actively engaged * * * for the purpose of obtaining income or other specific trade or business benefit." However optimistically petitioner approached meetings four and six, he has not here shown that he expected any income or identifiable business benefits from his reminiscing about the business with retired former *218 Tupperware distributors. [13]
However, the 50 percent of calendar days of use test in section 1.274-2(e)(4)(iii), Income Tax Regs., contains no negative implication. Though petitioner fails to satisfy the test, he may yet show by all the facts and circumstances the primary use of the cottage was to further his business. Sec. 1.274-2(e)(4)(i), Income Tax Regs.; Ashby v. Commissioner,50 T.C. 409 (1968). We do not find petitioner has done so. Section 1.274-5(c)(6)(iii), Income Tax Regs., provides "[if] a taxpayer fails to maintain adequate records concerning a facility which is likely to serve the personal purposes of the taxpayer, it shall be presumed that the use of such facility was primarily personal." This rule is expressly supported by the legislative history, S. Rep. No. 1881, supra,1962-3 C.B. at 738, and the language of the statute, which disallows any deduction "unless the taxpayer establishes that the facility was used primarily *219 for * * * business," sec. 274(a)(1)(B) (Emphasis added).In the instant case, petitioner has failed to convincingly demonstrate a business purpose for or keep adequate records regarding meetings four and six. See Fred W. Amend Co. v. Commissioner,55 T.C. 320 (1970), affd. 454 F.2d 399 (7th Cir. 1971); Henry v. Commissioner,36 T.C. 879 (1961).Nor has he substantiated his assertion that his personal use totaled only 22 days. Petitioner must have realized his claim of 23 business days and 22 personal days would be viewed skeptically by respondent. He has not here carried his additional burden of proof as to the cabin's primary use, which goes beyond his normal burden of overcoming the respondent's presumption of correctness, Tax Court Rules of Practice and Procedure, Rule 142(a). In considering all the facts and circumstances, we further note petitioner's wife and three children also had the use of the cottage during days claimed as business meetings. Assuming arguendo both members of each couple invited to the cabin were Tupperware salespersons, [14] since the average number of petitioner's associates or former associates at each *220 meeting was a bit less then three, petitioner's family used the facility as much as he and his quests did during meetings. Because use of the cabin was admittedly totally personal the other half of the time, all of the facts show that no more than 25 percent of actual use was not personal, and this falls far short of section 274's primary use test. For all of the foregoing reasons, based upon the entire record we hold the cottage was not used primarily to further petitioner's business.We thus hold section 274 disallows all of his claimed promotional expense deduction. Since we hold none of petitioner's claimed expenses of the cottage are deductible, we need not consider whether any portion of them would be "directly related" to petitioner's trade or business. Finally, with respect to the second issue we hold petitioner is not entitled to a section 38 investment credit because none of the equipment purchased for the cottage is a depreciable asset.Sec. 48(a)(1); sec. 1.48-1(b)(1), Income Tax Regs.; Nicholls, North, Buse Co. v. Commissioner,56 T.C. 1225, 1238 (1971). To reflect the foregoing and the parties' stipulation *221 as to a casualty loss, Decision will be entered under Rule 155.
Footnotes
1. Respondent does not dispute any of these amounts or the manner in which they were derived.↩
2. All dates are during the calendar year 1973. Thirteen days petitioner spent at the cabin helping repair a wall are not listed.↩
3. The record is incurably vague as to whether one or both members of the couples who visited on meetings one and two were Tupperware salespersons or employees. ↩
4. Petitioner's summary for Jan. 25-28.↩
5. Petitioner's summary of the meeting indicates only that: "There was no definite time to the Get-Together--it was all day--all the time. The Get-Together was always very informal."↩
6. Attached to petitioner's contemporaneous handwritten outline are a number of topics to be discussed at some point, but his schedule for the meeting lists only the following: ↩
Tentative plans
Should arrive about noon on
Wed. 18, depart Sun. 22
Wed. 18th
Lunch?--Visit--Boat Trip--
Dinner--Visit
Thurs. 19th
Breakfast--Visit--Fishing--Lunch--
Visit--Dinner--Sight Seeing
Fri. 20th
Breakfast--Fishing--Lunch--Visit--
Dinner--Fishing--Visit
Sat. 21st
Breakfast--Visit--Lunch--Boat Trip--
Dinner Out--Visit
Sun. 22nd
Church--Breakfast--Visit--Plan
to Leave!
7. Petitioner's memo to respondent.↩
8. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue. ↩
9. This amount is 7 percent of $3,478.21 which is 50 percent of the cost of the following 1973 purchases for the cabin: ↩
Trash Compactor $ 207.95
Dehumidifer
115.95
"Blazer" Truck
6,126.90
Dock
505.61
$6,956.41
10. The parties have stipulated the 13 days petitioner spent at the cottage repairing a wall are not be counted as personal or business days for the primary use test.↩
11. Petitioner does not dispute the validity of respondent's regulations which in any event have repeatedly been held valid because they are legislatively mandated, sec. 274(h), and closely reflect the legislative history. E.g., Handelman v. Commissioner,509 F.2d 1067, 1073 & cases cited (2d Cir. 1975); Walliser v. Commissioner, 72 T.C.     (June 7, 1979); Nicholls, North, Buse Co. v. Commissioner,56 T.C. 1225 (1971); Sanford v. Commissioner,50 T.C. 823, 830-832 (1968), affd. per curiam 412 F.2d 201↩ (2d Cir. 1969). 12. As defined in sec. 1.274-2(d)(3)(i)(a↩), Income Tax Regs.
13. Indeed, the record shows petitioner's major purpose for meetings four and six, and one and two as well, was to allow his guests to leave the pressures of business goals behind to be able to share experiences.↩
14. But see n. 3, supra.↩