RENSSELAER POLYTECHNIC INSTITUTE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7024–79.     Filed December 1, 1982.

*George C. Shattuck*, for the petitioner.
*Bradford A. Johnson*, for the respondent.

OPINION

FAY, *Judge*: Respondent determined a deficiency of $12,653.13 in petitioner's Federal income tax for its fiscal year ending June 30, 1974. After concessions, the only issue is the proper method of allocating certain indirect expenses between petitioner's exempt and unrelated activities.

All the facts have been stipulated and are found accordingly.

Petitioner Rensselaer Polytechnic Institute, a nonprofit educational organization incorporated under the laws of the State of New York, had its principal office in Troy, N.Y., at the time of filing its petition herein. Petitioner is exempt from tax under section 501(c)(3).[1]

Petitioner owns and operates a fieldhouse the primary function of which is to allow petitioner to carry out its educational responsibilities.[2] For example, the facility is used for physical education programs, collegiate ice hockey, intramurals, commencement activities, and ice skating for the student body. During the taxable year in issue, it was also used for activities and events unrelated to its exempt function such as commercial shows and public skating.[3]

Through conduct of the unrelated business activities, petitioner is subject to the tax imposed by section 511(a)(1) on its unrelated business taxable income.[4] Unrelated business activities generated gross receipts of $476,613 during petitioner's taxable year ending 1974. Expenses directly allocable to those

---

[1] All statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue.

[2] The fieldhouse, a one-story structure, was built in 1949. Depending on the event, it has a seating capacity ranging from 4,615 to 7,500.

[3] Commercial shows included:

    (a)   Disney on Parade
    (b)   Los Muchachos
    (c)   Roller Derby
    (d)   Ice Capades
    (e)   Royal Lipizzans
    (f)   Festival of Music

[4] For years prior to and subsequent to its 1974 taxable year, petitioner has not conceded that such activities constituted an unrelated trade or business or that the income therefrom is unrelated business taxable income.

activities totaled $371,407.[5] In addition to these direct costs, petitioner incurred indirect costs of $301,409 in connection with the operation of the fieldhouse. There is no question the direct costs of $371,407 are deductible against petitioner's unrelated business gross income. The only issue is what portion of the indirect expenses is deductible against such business income.[6] The dispute centers on how these indirect expenses are to be allocated between petitioner's unrelated business activities and its exempt activities.

Petitioner contends it is entitled to allocate all indirect expenses on the basis of relative time of actual use. Thus, in computing the portion of deductible expenses, petitioner multiplies the total amount of indirect expenses by a fraction the numerator of which is the total number of hours the fieldhouse was used for commercial events and the denominator of which is the total number of hours the fieldhouse was used for all activities and events. Respondent urges two different formulas, one for fixed expenses and another for variable expenses. Respondent argues the allocation of fixed expenses must be made not on the basis of actual use, but on the basis of available use. Thus, he contends the denominator of the fraction should be computed by reference to the total number of hours in the taxable year. With respect to variable

---

[5] These direct expenses, referred to by the parties as "event costs," include costs which have been specifically identified with the various events, e.g., contract and labor costs attributable to a specific event. Also included in these direct costs is the total amount of petitioner's general and administrative expenses ($8,050), which the parties have agreed are allocable to the unrelated business activities.

[6] The parties have categorized the expenses at issue herein into "fixed" and "variable" expenses. "Variable" expenses are described as those types of expenses which cannot be shown to be attributable solely to a particular unrelated or related use of the fieldhouse and which fluctuate in response to the actual use of the fieldhouse. Unlike "variable" expenses, "fixed" expenses, such as depreciation, are those expenses generally deemed to be paid continuously over a period of time regardless of the way the fieldhouse is used. Those indirect expenses are listed as follows:

*Fixed expenditures*

| | |
|---|---|
| Salaries and fringe benefits | $59,415 |
| Operating expenditures | 1,356 |
| Repairs and replacements | 14,031 |
| Depreciation | 29,397 |
| Total | 104,199 |

*Variable expenditures*

| | |
|---|---|
| Wages and fringe benefits | $108,347 |
| Operating expenditures | 63,550 |
| Repairs and replacements | 25,313 |
| Total | 197,210 |

expenses, respondent essentially agrees the allocation can be based on time of actual use, but he disagrees with petitioner's method of computing total hours of use for purposes of this allocation.[7] We agree with petitioner that the allocation with respect to all indirect expenses can be made on the basis of actual use; however, we uphold one adjustment made by respondent to petitioner's figure for total hours of actual use for all activities.

The regulations expressly provide that when a facility is used both to carry on exempt activities and to conduct unrelated trade or business activities, expenses attributable to such facility shall be allocated *on a reasonable basis*. Sec. 1.512(a)–1(c), Income Tax Regs. For the following reasons, we find an allocation based on actual use is "reasonable" within the meaning of that regulation.

This Court has consistently upheld allocations based on time of actual use when the dual use of a facility is involved. Prior to the Tax Reform Act of 1976, home office expenses were deductible even though the business use of that home office was not exclusive.[8] Thus, an allocation of home office expenses between business and personal use had to be made. In *International Artists, Ltd. v. Commissioner*, 55 T.C. 94 (1970), we considered an allocation of maintenance and depreciation expenses attributable to both the personal and business use of a residence by the well-known musician and entertainer— Liberace. In allocating those expenses, we held respondent's

---

[7]For purposes of these allocations, both parties agree the fieldhouse was actually used 1,568 hours during the year for unrelated business activities. They disagree over the computation of total hours of use for all activities, both related and unrelated. Petitioner contends such figure is 4,698¼ hours whereas respondent contends that figure is 6,507½ hours. There are 8,760 hours in the year. Thus, the parties' contentions are as follows:

| | *Petitioner* | | | *Deductible portion* |
|---|---|---|---|---|
| $301,409 | Fixed expenses | $\times$ | $\dfrac{1568 \text{ hours}}{4698¼ \text{ hours}}$ = | $100,592.63 |
| | + | | | |
| | Variable expenses | | | |

| | *Respondent* | | | |
|---|---|---|---|---|
| 104,199 | Fixed expenses | $\times$ | $\dfrac{1568 \text{ hours}}{8760 \text{ hours}}$ = $18,651.15 | |
| 197,210 | Variable expenses | $\times$ | $\dfrac{1568 \text{ hours}}{6507½ \text{ hours}}$ = 47,518.29 | 66,169.44 |

[8]Sec. 280A was added to the Internal Revenue Code of 1954 by the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520. Sec. 280A(c) restricts deductions for home office expenses to only those portions of a dwelling that are used exclusively and on a regular basis for business purposes.

allocation was improper since it took into account days Liberace left the house unattended. Instead, an allocation based on days of actual use was adopted.

Similarly, in *Gino v. Commissioner*, 60 T.C. 304 (1973), revd. 538 F.2d 833 (9th Cir. 1976), cert. denied 429 U.S. 979 (1976), we rejected respondent's contention, which was based on Rev. Rul. 62–180, 1962–2 C.B. 52, that we apply hours of business use to total hours in the day where the taxpayer combined personal and business use in his home office. Instead, we again adopted an allocation based on hours of actual use. After reconsidering our holding in *Gino*, in light of the Ninth Circuit Court of Appeals' reversal therein, we reaffirmed our position that the allocation should be based on time of actual use. *Browne v. Commissioner*, 73 T.C. 723 (1980) (a Court-reviewed opinion).[9]

The rationale of those cases applies herein. As this Court stated in *Gino v. Commissioner, supra*:

The obvious difficulty with an allocation of business use as a percentage of total hours of availability for use rather than total hours of use, is the erroneous and distorting assumption that a dual-use facility is not, when unused, just as much available for business as it is for nonbusiness use. * * * [*Gino v. Commissioner*, 60 T.C. at 315.]

Thus, as long as the facility is equally available for either purpose during hours of nonuse, expenses are to be allocated in proportion to actual use. Through its ownership of the facility, petitioner exercised total control over its operation. To be sure, petitioner's primary purpose for the fieldhouse was to carry out its educational responsibilities, but that does not make the fieldhouse any less available for commercial activities when not being used for educational purposes. We find the

---

[9]As was pointed out in Judge Hall's concurring opinion in *Browne v. Commissioner*, 73 T.C. 723, 730 (1980), the Ninth Circuit Court of Appeals' reversal of our opinion in *Gino v. Commissioner*, 60 T.C. 304 (1973), revd. 538 F.2d 833 (9th Cir. 1976), was not based on the merits of respondent's allocation but was based, instead, on administrative deference to respondent's revenue ruling. That concurring opinion expressly refused to uphold respondent merely because he had announced his position in a revenue ruling. A revenue ruling, as distinguished from a Treasury regulation, does not have the force and effect of law. See *Idaho Power Co. v. Commissioner*, 477 F.2d 688, 696 n. 10 (9th Cir. 1973), revd. on other grounds 418 U.S. 1 (1974).

In the meantime, the Ninth Circuit Court of Appeals had reaffirmed their decision in *Gino*. See *Lewis v. Commissioner*, 560 F.2d 973 (9th Cir. 1977), revg. and remanding a Memorandum Opinion of this Court.

fieldhouse was at all times equally available for petitioner's educational and commercial activities.[10]

Nevertheless, respondent claims a different rule should apply when, as in this case, the facility is used on a regular basis for nontaxable activities.[11] We note, however, that in both *Browne v. Commissioner, supra*, and *Gino v. Commissioner, supra*, the taxpayers lived in the facility (their residences) the entire year. Despite such regular and inherently personal use of the facilities, this Court upheld allocations between business use and personal use on the basis of time of actual use. Thus, we reject respondent's argument that a different rule should apply simply because the facility is used on a regular basis for nontaxable purposes.

While we recognize the aforementioned cases do not involve tax-exempt organizations and, thus, do not necessarily control an allocation between an organization's tax-exempt activities and its business activities, we nevertheless find these cases relevant and instructive. They do reflect a strong and consistent position taken by this Court that an allocation of expenses attributable to the dual use of a facility must be allocated by comparing time of actual use.[12] We find no difference in the treatment to be accorded tax-exempt organizations.

---

[10]We see no threat to petitioner's basic tax exemption by any foreseeable use of the fieldhouse by petitioner. Nor does respondent allege its exemption would be threatened.

Even if petitioner's profits became so vast as to threaten its basic exemption, we do not believe any effect such threat might have on the availability of the fieldhouse for commercial events requires a stricter allocation formula. The important fact is that, under its control, the facility was available for any purpose petitioner deemed appropriate. If petitioner elected to use it for commercial purposes, such use would carry independent tax significance of its own. For instance, petitioner would certainly be subject to tax on any unrelated business income generated by commercial activities, and petitioner may risk its basic exemption if its profit-making activities became too vast. Of course, those are factors petitioner must consider in deciding how to use the fieldhouse. But for purposes of allocating expenses, we find the facility was available without restriction for any purpose petitioner deemed appropriate.

[11]In support of this proposition, respondent cites the following cases in which the facilities at issue therein were used only on an intermittent basis: *Dawson v. Commissioner*, T.C. Memo. 1972-4 (a cabin cruiser used infrequently); *McKinney v. Commissioner*, T.C. Memo. 1981-181 (a condominium used approximately 2 months of the year); *Copeland v. Commissioner*, T.C. Memo. 1980-476 (a beach cottage used during the summer months); *International Artists, Ltd. v. Commissioner*, 55 T.C. 94 (1970) (a residence left unattended for long periods of time).

[12]We consider this Court's opinion in *Bolton v. Commissioner*, 77 T.C. 104 (1981), on appeal (9th Cir., Jan. 4, 1982), to be inapposite. In that case, interest and property taxes of the taxpayer's vacation home were allocated to the rental use of the home by comparing the

Respondent argues petitioner's method permits it to deduct expenses connected with its exempt activities. However, petitioner is not seeking to deduct against its business income any expense of the college other than a portion of those expenses of operating the fieldhouse. The allocation herein simply allows petitioner to apportion in a reasonable manner those overhead expenses of operating one facility of the entire institution. Accordingly, we find petitioner's allocation, based on time of actual use, is "reasonable" within the meaning of section 1.512(a)–1(c), Income Tax Regs.[13]

Respondent makes three adjustments to petitioner's figure for total hours of actual use (4698¼ hours). He contends time spent for ice resurfacing (565¾ hours), for maintenance and repair (544½ hours), and for downtime (699 hours) should be added to that figure, thereby increasing the denominator and reducing the portion of deductible expenses. We uphold one of the claimed adjustments.

In computing hours of commercial use, petitioner included those hours spent for ice resurfacing where applicable to the commercial event. Then, in computing total hours of use, petitioner seeks to exclude ice resurfacing hours which were not applicable to a commercial event. Any reasonable allocation requires, at a minimum, consistent treatment of items entering into the allocation formula. If petitioner is going to compute the number of hours of commercial use by adding resurfacing hours where applicable to a commercial event, it is only proper that all resurfacing hours be included in the computation of total hours of actual use. Accordingly, we uphold respondent's adjustment for hours of ice resurfacing.

Hours spent for maintenance and repair do not appear, at least from the stipulated record, to be related to any of the particular activities and events held at the fieldhouse. Rather, that time was apparently spent for the general upkeep of the facility, and all activities and events benefited from such maintenance. Moreover, the record does not indicate that

number of days the home was rented to the total number of days in the year. However, that allocation was based on the purpose and the wording of the intricate and complex provisions of sec. 280A. No similar statutory authority and purpose is present in this case.

[13]Alluding to the manner in which the parties have categorized the expenses at issue herein into "fixed" and "variable" expenses (see note 6 *supra*), our holding applies to both types of expenses.

petitioner's figure for hours of commercial use—the numerator—includes any time spent for maintenance and repair. Thus, we find those neutral hours need not be included in the figure for total hours of actual use.[14]

Downtime is the period during business hours when the fieldhouse was available for use but, in fact, was not used. Dispositive of this issue is our holding that an allocation can be based on actual use, and that time when the facility was merely available for use need not be taken into account. Accordingly, petitioner need not add hours of downtime to his figure for total hours of use.

In summary, we hold, with one adjustment to his figures, petitioner's allocation formula based on actual use is "reasonable" within the meaning of section 1.512(a)–1(c), Income Tax Regs.

Accordingly,

*Decision will be entered under Rule 155.*

---

[14]While the maintenance and repair hours are not attributable to specific activities, they do benefit all activities carried on in the fieldhouse. Thus, if those hours were to be included in total hours of use, as respondent contends, a portion would properly be includable in hours of commercial use—the numerator. And that portion would be allocated, again, on the basis of hours of actual use but without taking into account those particular hours of maintenance and repair. Thus, the fractional percentage would be identical to the percentage which results when no such hours are included in either the numerator or denominator. Under either approach, the result is the same.