JULIUS M. ISRAEL LODGE OF B'NAI B'RITH NO. 2113, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Julius M. Isr. Lodge of B'Nai B'Rith No. 2113 v. Commissioner
Docket No. 14500-93.
United States Tax Court
T.C. Memo 1995-439; 1995 Tax Ct. Memo LEXIS 438; 70 T.C.M. (CCH) 673; September 14, 1995, Filed *438 Decision will be entered under Rule 155. Ruth E. Salek, for petitioner. Christina Moss, for respondent. GOLDBERG, Special Trial Judge GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was assigned pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined deficiencies in petitioner's Federal income taxes for taxable years 1987, 1988, and 1989, in the respective amounts of $ 377.85, $ 3,488.05, and $ 3,078.73. After concessions, [2] the issue for decision is whether proceeds attributable to petitioner's "instant bingo" activity constitute unrelated business taxable income under section 511(a). This case was submitted fully stipulated. At the time the petition was filed, petitioner's principal place of business was in Houston, Texas. *439 The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner is a member lodge of a national fraternal organization known as B'nai B'rith. Since 1967, petitioner has been recognized by the Internal Revenue Service as exempt from taxation under section 501(c)(8). Under its constitution and bylaws, petitioner's purpose is to: (1) Unite persons of the Jewish faith in the work of promoting their highest interest and those of humanity; (2) develop and elevate the mental and moral character of the people of the Jewish faith; (3) inculcate the purest principles of philanthropy, honor, and patriotism; (4) support science and art; (5) alleviate the wants of the poor and needy; (6) visit and care for the sick; (7) come to the rescue of victims of persecution; and (8) provide for, protect, and assist the aged, widowed, and orphaned on the broadest principles of humanity. During the taxable years at issue, petitioner conducted bingo approximately 3 times per week to obtain funds for its charitable purposes. In July 1987, petitioner began conducting "instant bingo". Bingo and "instant bingo" (collectively referred to as the combined bingo activities) *440 were not substantially related to any exempt functions or purposes of petitioner. The combined bingo activities were held in accordance with the Texas Bingo Enabling Act (the Act). Tex. Rev. Civ. Stat. art. 179d (West 1987). Bingo is a game of chance played with cards printed with 5 rows of 5 squares each. Numbers are called by random selection and the participants must cover enough numbers on their cards to form preselected patterns. The first participants to do so are declared the winners and prizes are awarded in the presence of all participants. "Instant bingo" is also a game of chance where an individual places a wager by purchasing an "instant bingo" card. The front of the cards are preprinted with bingo card patterns and then covered with pull-tabs. Winners are determined by the individual's pulling back the sealed tabs on the front of the card, and then comparing the patterns under the sealed tabs with the winning patterns preprinted on the back of the card. Winners collect their prizes from the cashier. During the taxable years at issue, petitioner received gross receipts from its combined bingo activities in the following amounts: Year
Bingo
Instant Bingo
Total
1987
$ 132,328
$ 92,643
$ 224,971
1988
331,195
263,235
594,430
1989
248,078
230,002
478,080
*441 The Act and the regulations promulgated thereunder require that 35 percent of an organization's combined bingo activity net quarterly receipts be disbursed each quarter for charitable purposes, and that 100 percent of the receipts be devoted to charitable purposes. The Act does not require that the receipts, other than the 35-percent minimum quarterly distribution, be disbursed in any given taxable period. During the taxable years at issue, petitioner satisfied the 35-percent requirement for its combined bingo activities by placing the required amounts into account No. 00-601-856 under the name of B'nai B'rith Special Fund: Year
Amount Required
Amount Set Aside
Amount Spent
1987
$ 3,752
$ 3,760.06
--  1988
13,888
18,349.52
$ 12,271.50
1989
12,817
14,665.93
11,893.15
The parties have stipulated that the following expenses are attributable to petitioner's "instant bingo" activities: Expense
1987
1988
1989
35-percent contribution
$ 1,231
$ 6,132
$ 6,400
License fees
412
1,329
1,455
Cost of goods sold (COGS)
2,778
7,325
6,400
Sales tax on COGS
229
604
528
Sales tax on gross receipts
3,036
10,529
9,200
Prizes
65,292
185,098
162,142
Total
$ 72,978
$ 211,017
$ 186,125
*442 The parties also stipulated to the amounts of additional expenses incurred as a result of petitioner's combined bingo activities. The parties agree that 52.58 percent of these additional expenses are attributable to "instant bingo": Portion of Expense Attributable
to Instant Bingo
Expense
1987
1988
1989
Accounting
$ 3,101.16
$ 2,839.32
$ 1,787.72
Janitorial
694.58
437.99
508.97
Labor
7,066.22
18,354.10
14,094.06
Miscellaneous
408.02
659.35
821.29
Payroll taxes
--  648.83
1,631.55
Security
788.17
624.65
--  Rent
10,884.06
19,165.41
19,559.76
Utilities
94.64
--  --  Total
$ 23,036.85
$ 42,729.65
$ 38,403.35
Accordingly, petitioner's "instant bingo" activities resulted in a loss of $ 3,371.85 in 1987, and profits in 1988 and 1989 in the respective amounts of $ 9,488.35 and $ 5,473.65. Petitioner filed Forms 990, Return of Organization Exempt From Income Tax, for the taxable years at issue. Petitioner did not file Forms 990T, Exempt Organization Business Income Tax Returns, for any taxable year relevant herein. In her notice of deficiency, respondent determined that the "instant bingo" activities of petitioner resulted in unrelated *443 business taxable income which, therefore, was subject to unrelated business income tax under section 511(a). Respondent determined that petitioner's bingo activities did not result in unrelated business taxable income because they fell within the exception stated in section 513(f)(2). Petitioner contends that there is no distinction between bingo and "instant bingo", and that both qualify under section 513(f)(2) as exceptions to the general definition of unrelated trade or business under section 513. The determination of respondent is presumed correct, and petitioner bears the burden of proving otherwise. Rule 142(a). Section 511(a) imposes a tax on income received by exempt organizations, which is derived from unrelated trade or business activities. Section 513(a) defines the term "unrelated trade or business" to include any trade or business carried on by an exempt organization, the conduct of which, aside from the organization's need for income, is not substantially related to the purpose that forms the basis of the organization's section 501 exemption. Prior to 1976, the income of exempt organizations from the public conduct of gambling activities was subject to unrelated business *444 income tax. See Smith-Dodd Businessman's Association, Inc. v. Commissioner, 65 T.C. 620 (1975). In the Tax Reform Act of 1976, Congress enacted an exception under section 513(d)(1) for "public entertainment activity" as defined in section 513(d)(2). Tax Reform Act of 1976, Pub. L. 94-455, sec. 1305, 90 Stat. 1520, 2105. Applicable to organizations described in section 501(c)(3), (c)(4), or (c)(5), this exception covers public entertainment activity conducted in: (i) conjunction with an international, national, State, regional, or local fair or exposition, (ii) accordance with State law which permits the activity to be conducted solely by such an organization, or by an agency, instrumentality, or political subdivision of such State, or (iii) accordance with the provisions of State law which permit such an organization to be granted a license to conduct not more than 20 days of such activity in any year on payment to the State of a lower percentage of revenue from such licensed activity than the State requires from organizations not described in section 501(c)(3), (4), or (5).
In 1978, Congress enacted section 513(f), which provides for an exception *445 from unrelated business income tax for income from certain bingo games. This section provides: (f) Certain bingo games. (1) In general.--The term "unrelated trade or business" does not include any trade or business which consists of conducting bingo games. (2) Bingo game defined.--For purposes of paragraph (1), the term "bingo game" means any game of bingo-- (A) of a type in which usually (i) the wagers are placed, (ii) the winners are determined, and (iii) the distribution of prizes or other property is made, in the presence of all persons placing wagers in such game,
(B) the conducting of which is not an activity ordinarily carried out on a commercial basis, and (C) the conducting of which does not violate any State or local law.
Pub. L. 95-502, sec. 301(a), 92 Stat. 1693, 1702 (1978), effective for tax years beginning after December 31, 1969. The State of Texas authorizes qualified organizations to conduct bingo and "instant bingo" games under the Act, and regulates the games pursuant to the Bingo Tax Rules promulgated by the Texas Comptroller of Public Accounts. Section 2(2) of the Act defines bingo as follows: (2) "Bingo" or "game" means a specific *446 game of chance, commonly known as bingo or lotto, in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random.
Section 3.554(a)(3) of the Bingo Tax Rules defines an "instant bingo game" as: (3) Instant bingo game. A game of chance played by the random selection of one or more individually prepackaged instant bingo cards from a series of instant bingo cards. Prize winners are determined by the preprinted appearance of numbers in a prescribed order, according to winning arrangements indicated on the reverse side of the card.
The Bingo Tax Rules restrict the sale and redemption of "instant bingo" cards to defined time periods. Section 3.554(d)(3) of the Bingo Tax Rules provides: All sales of instant bingo cards must be performed under the same conditions and in the same manner as sales of regular and paper special bingo cards. Thus, a licensed organization may sell Instant Bingo cards on the premises specified in its license and where regular or paper special bingo cards are sold prior to its licensed times. They may be redeemed for cash or other cards only: (A) during the times that *447 bingo cards are sold; (B) during the organization's licensed times where regular or paper special bingo games are being conducted; or (C) during a required 30-minute intermission between bingo occasions of two organizations.
Texas Admin. Code tit. 6, sec. 3.554(d)(3) (1988). Respondent concedes that, in Texas, the conducting of "instant bingo" is not an activity ordinarily carried out on a commercial basis and that petitioner is not in violation of any State or local law. Respondent argues, however, that "instant bingo" does not meet the definition of bingo under section 513(f), and, therefore, the net proceeds from "instant bingo" are subject to tax under section 511(a). Petitioner contends that "instant bingo" is bingo as defined by section 513(f) because, under State law, "instant bingo" is a game where wagers are placed, winners are determined, and prizes are distributed in the presence of all individuals placing wagers in such game. We disagree. It is well established that Federal law governs the construction of terms for Federal tax purposes. United States v. Irvine, 511 U.S.    , 114 S. Ct. 1473, 1481 (1994) (citing Burnet v. Harmel, 287 U.S. 103 (1932)); *448 C.M. Thibodaux Co. v. United States, 915 F.2d 992, 996 (5th Cir. 1990). While State law creates legal interests, it is Federal law that dictates when and how to tax. This is true regardless of State classifications. See Perpetual Bldg. & Loan Association v. Commissioner, 34 T.C. 694 (1960), affd. per curiam sub nom. Estate of Cooper v. Commissioner, 291 F.2d 831 (4th Cir. 1961). As such, the State classification of "instant bingo" as a bingo game does not establish that "instant bingo" meets the statutory requirements of section 513(f). The legislative history defines the type of bingo games that qualify for exemption under section 513(f): Bingo games qualifying for exemption. The bill applies to a certain type of game of chance commonly known as "bingo". In general, bingo is a game of chance played with cards which are printed with five rows of five squares each. The purpose of the games is to select a winner from among the participants. To win, a participant must cover enough called numbers to form a pattern -- usually a vertical, horizontal, or diagonal line, or four corners. Generally, *449 the order of the called numbers is determined by random selection. To the extent that, in some parts of the country, the term "beano game" is used instead of "bingo game" to designate the same type of game, the bill also applies to beano games. No other games of chance (including, but not limited to, keno games, dice games, etc.) are covered by this bill. The bill applies only to bingo games of the type in which usually the wagers are placed, the winners are determined, and the prizes are distributed in the presence of all persons placing wagers in the game. Thus, this bill would generally apply to bingo games which would be excluded from the term "lottery" under the wagering tax.
H. Rept. 95-1608 (1978), 1978-2 C.B. 395, 397. Respondent incorporated almost identical language into the regulations: Bingo game defined. A bingo game is a game of chance played with cards that are generally printed with five rows of five squares each. Participants place markers over randomly called numbers on the cards in an attempt to form the preselected pattern such as a horizontal, vertical, or diagonal line, or all four corners. The first participant to *450 form a preselected pattern wins the game. As used in this section, the term "bingo game" means any game of bingo of the type described above in which wagers are placed, winners are determined, and prizes or other property is distributed in the presence of all persons placing wagers in that game. The term "bingo game" does not refer to any game of chance (including, but not limited to, keno games, dice games, card games, and lotteries) other than the type of game described in this paragraph.
Sec. 1.513-5(d), Income Tax Regs.
Petitioner argues that this regulation is invalid because it does not harmonize with the plain language of the statute. It is well established that a regulation must be sustained by the courts unless inconsistent with the underlying statute or fundamentally at odds with the manifest congressional design. United States v. Vogel Fertilizer Co., 455 U.S. 16, 26 (1982); National Muffler Dealers Association, Inc. v. United States, 440 U.S. 472 (1979). Based on the legislative history of section 513, we find that the regulation is a valid interpretation of the statute and consistent with congressional *451 intent. [3]
The type of bingo which is excepted under section 513(f) is the type where all people who participate in the activity do so all at once. To the contrary, petitioner sold "instant bingo" cards and paid prizes on winning cards while regular bingo cards were being sold during the regular bingo games, and during the 30-minute required intermissions between petitioner's bingo activities and another organization's bingo activities. As such, *452 a participant could purchase an "instant bingo" card, pull back the tabs to discover if he or she was a winner, redeem a winning card, and leave the premises before another potential participant purchases an "instant bingo" card. It is likely, therefore, that wagers are placed, winners are determined, and prizes are distributed at times when all persons placing wagers in a given "instant bingo game" are not present. Petitioner cites Priv. Ltr. Rul. 90-42-016 (July 19, 1990) for the position that section 513(f) should be broadly interpreted to include "instant bingo" in its definition of bingo. First, as petitioner concedes, private letter rulings are not authority and may not be cited as precedent. Sec. 6110(j)(3). Moreover, even assuming that private letter rulings had precedential value, the ruling involves section 4421 (wager tax) and the game of Keno where wagers are placed when a participant purchases a ticket immediately before the beginning of each game, and winning tickets must be presented for payment immediately after the end of the game and before the start of the next game. Keno, therefore, is unlike "instant bingo" where a participant need not wait for all other participants *453 to purchase their cards, nor are they required to redeem their cards before a new game may begin. [4]
*454 Petitioner further argues that no valid purpose is served by respondent's artificial distinction between "instant bingo" and "bingo" because the conduct of "instant bingo" by petitioner does not violate the congressional intent of the unrelated business income tax provisions. Citing Rensselaer Polytechnic Inst. v. Commissioner, 732 F.2d 1058 (2d Cir. 1984), affg. 79 T.C. 967 (1982), and the legislative history of section 513(f), petitioner advances the policy argument that, because the purpose of the unrelated business income tax is to eliminate any competitive edge exempt organizations have over other organizations, and the State of Texas authorizes only exempt organizations to conduct "instant bingo", the proceeds therefrom should not be subject to unrelated business income tax. Petitioner contends that a showing of unfair competition between petitioner and a taxpaying enterprise is a necessary prerequisite to a finding that income from "instant bingo" is taxable under section 513(f). Petitioner's argument is not a novel one. The Court of Appeals for the Fifth Circuit in Louisiana Credit Union League v. United States, 693 F.2d 525 (5th Cir. 1982), *455 faced with the same argument, discussed at length the legislative history of the unrelated business income tax provisions and the cases interpreting that history. [5] Based on its extensive study, the Court concluded that "the presence or absence of competition between a tax-exempt organization and taxable entities engaged in similar activities is not in and of itself determinative of whether a tax-exempt organization's business income should be taxed." Id. at 541; see also Professional Ins. Agents v. Commissioner, 78 T.C. 246, 264 (1982). The Court in Louisiana Credit Union League v. United States, supra, recognized that the existence of competition may be one factor to consider, but that elimination of *456 such competition is "corollary to the larger goals of producing revenue and achieving equity in the tax system." Id. at 540. The Court went on to state that "The critical question under the statute is not the question of unfair competition, but whether the activity constitutes an unrelated trade or business." Id. at 542 (quoting Clarence LaBelle Post No. 217 v. United States, 580 F.2d 270, 275 (8th Cir. 1978) (J. Lay, concurring); see also Smith-Dodd Businessman's Association, Inc. v. Commissioner, 65 T.C. 620, 624 (1975) ("unfair competition plays a relatively insignificant role in the application of the amended unrelated business tax"). [6]
Petitioner *457 concedes that its "instant bingo" activities are not substantially related to any of its exempt functions or purposes. Therefore, "instant bingo" is an unrelated trade or business and the proceeds therefrom will be subject to the unrelated trade or business income tax unless it falls within the scope of the exception under section 513(f). Petitioner argues that section 513(f) should encompass "instant bingo" because to decide otherwise would violate the intent of the statute. The purpose of section 513(f) is to carve out a specific exception to the definition of an unrelated trade or business for certain bingo games. Congress clearly envisioned a specific type of game in which a caller called out random numbers to a group of participants in a public setting. Other games of chance were specifically excluded. Moreover, the fact that "instant bingo" cards are preprinted with bingo boards does not transform the cards into what is commonly known as bingo. If this were true, lottery scratch-off cards with poker hands would be transformed into what is commonly known as a poker game. Such a transformation is illogical. Accordingly, "instant bingo" does not satisfy the requirements of section *458 513(f). Petitioner's final argument is that respondent's creation of a distinction between "instant bingo" and bingo for purposes of the unrelated business income tax conflicts with the Act and the Internal Revenue Code because: (1) The distinction requires petitioner to allocate its expenses between bingo and "instant bingo"; and (2) the distinction requires that petitioner trace its charitable contributions back to "instant bingo" proceeds in order to deduct the same under section 170. An analysis of the Internal Revenue Code, however, belies petitioner's argument. An exempt organization is permitted to deduct from its unrelated business income any ordinary and necessary business expenses paid or incurred during the taxable year and directly connected with the carrying on of such trade or business. Sec. 162(a); sec. 512(a). To be directly connected with the conduct of unrelated business, an item of deduction must have a proximate and primary relationship to the carrying on of that business. Sec. 1.512(a)-1(a), Income Tax Regs. Where facilities are used to carry on exempt and unrelated trade or business activities, expenses, depreciation, and similar items attributable to such *459 facilities shall be allocated between the exempt and nonexempt businesses. Sec. 1.512(a)-1(c), Income Tax Regs. Furthermore, a taxpayer is not allowed any deductions against income which is nontaxable or tax exempt. Sec. 265. Because petitioner is required by statute to allocate and trace expenses between exempt activities and unrelated trade or business activities, we find petitioner's argument to be without merit. We conclude that the distinction between bingo and "instant bingo" is valid under section 513(f), the regulations thereunder, and the legislative history. Based on the foregoing, we conclude that the proceeds attributable to petitioner's "instant bingo" activities are subject to the unrelated trade or business income tax under section 511(a). As such, petitioner is entitled to deduct the ordinary and necessary business expenses solely attributable to "instant bingo", as determined in this opinion. Petitioner requests that the net income from "instant bingo" in 1988 and 1989 be offset against losses in earlier and later years. Because these years are not before us and we have been presented no evidence of such losses, we need not address this issue. To reflect the foregoing, *460 Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent conceded additional allowable expenses to partially offset any unrelated trade or business income determined as a result of this opinion. The additional expenses are referenced herein and will be taken into consideration for purposes of the Rule 155 calculations.↩
3. Congress proposed an amendment to section 513(f) to include: other qualified games of chance * * * defined as any game of chance (other than bingo) if (1) the conducting of such game by the organization does not violate State or local law, (2) the conducting of such game by for-profit organizations would violate State or law local law, and (3) no substantial part of the work in conducting such game is performed by individuals principally engaged in performing gambling services for hire.↩
H. Conf. Rept. 102-1034 (1992). This amendment was not enacted into law.
4. Under the legislative history of section 513(f), and section 1.513-5(d), Income Tax Regs., Keno games are specifically excluded from the statutory definition of bingo. Furthermore, as petitioner correctly argues, section 513(f) encompasses only bingo games that are excluded from the term "lottery" as defined by section 4421(2). This section provides: (2) Lottery. The term "lottery" includes the numbers game, policy, and similar types of wagering. The term does not include-- (A) any game of a type in which usually-- (i) the wagers are placed, (ii) the winners are determined, and (iii) the distribution of prizes or other property made, in the presence of all persons placing wagers in such game, and
(B) any drawing conducted by an organization exempt from tax under sections 501 and 521, if no part of the net proceeds derived from such drawing inures to the benefit of any private shareholder or individual.
Because "instant bingo" fails to satisfy the first prong of the test under section 4421(2)(A), for reasons described herein, the term is not excluded from the term "lottery", and, therefore, is not within the scope of section 513(f)↩.
5. Under Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971), we look to the Court of Appeals for the Fifth Circuit for guidance.
6. Although sec. 513(f) legislatively overrides the decision in Clarence LaBelle Post No. 217 v. United States, supra↩, by creating the special exemption for bingo games, the reasoning of that case continues to be sound.