T.C. Memo. 1997-518

UNITED STATES TAX COURT

WOMEN OF THE MOTION PICTURE INDUSTRY, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 11227-96, 11581-96,     Filed November 17, 1997.
            11918-96, 11919-96,
            11921-96.


        Ronald E. Ingalls, for petitioners.

        Christina D. Moss, for respondent.

        MEMORANDUM FINDINGS OF FACT AND OPINION

        GOLDBERG, Special Trial Judge:  This case was heard

pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[2]

_____

[1]     Cases of the following petitioners are consolidated herewith
for purposes of trial, briefing and opinion:  Family Service of
El Paso, Inc., docket No. 11581-96; Schoenstatt, Inc., docket No.
11918-96; Amarillo Council on Alcoholism and Drug Abuse, docket
No. 11919-96; and Waldorf School Association of Texas, Inc.,
docket No. 11921-96.

[2]     Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
                                              (continued...)

Respondent determined deficiencies in Federal income taxes as follows:

Women of the Motion Picture Industry (WMPI):

| Tax Year Ending | Deficiency |
| --- | --- |
| June 30, 1990 | $2,435.00 |

Family Service of El Paso, Inc. (FSEP):

| Tax Year Ending | Deficiency |
| --- | --- |
| Dec. 31, 1989 | $1,471.00 |
| Dec. 31, 1990 | 2,166.00 |

Schoenstatt, Inc. (Schoenstatt):

| Tax Year Ending | Deficiency |
| --- | --- |
| Sept. 30, 1988 | $ 564.00 |
| Sept. 30, 1989 | 2,092.00 |
| Sept. 30, 1990 | 1,993.00 |
| Sept. 30, 1991 | 2,168.00 |

Amarillo Council on Alcoholism and Drug Abuse (ACADA):

| Tax Year Ending | Deficiency |
| --- | --- |
| Dec. 31, 1989 | $2,707.00 |

Waldorf School Association of Texas, Inc. (WSA):

| Tax Year Ending | Deficiency |
| --- | --- |
| Dec. 31, 1987 | $ 735.00 |
| Dec. 31, 1988 | 4,017.00 |
| Dec. 31, 1989 | 5,208.00 |

After concessions set forth infra, the issues for decision are whether (1) petitioners FSEP, Schoenstatt, ACADA, and WSA are entitled to business expense deductions from unrelated business taxable income (UBTI) for amounts allegedly expended for charitable purposes in excess of amounts conceded by respondent,

---

[2](...continued)
Procedure.

and (2) whether petitioners' charitable expenditures are fully deductible as business expenses under section 512.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. Each of the petitioners conducted its principal activities in the State of Texas at the time its petition was filed.

WMPI is an unincorporated association recognized by the Internal Revenue Service (IRS) as exempt from taxation under section 501(c)(6). FSEP, Schoenstatt, ACADA, and WSA are non-profit corporations incorporated under the laws of the State of Texas and are recognized by the IRS as exempt from taxation under section 501(c)(3). Each of the petitioners was recognized as exempt during the years in issue.

During the years in issue, petitioners were licensed by the State of Texas to conduct bingo activities. Thus, each was authorized to conduct bingo and "instant bingo" under the Bingo Enabling Act (the Act), Tex. Rev. Civ. Stat. Ann. art. 179d (West 1987 & Supp. 1990), and each was in compliance with the Act. Until 1990, the Texas Comptroller of Public Accounts was responsible for the regulation of bingo. As of January 1, 1990, the regulation of bingo was transferred to the Texas Alcoholic Beverage Commission.

4

"Instant bingo" is a game of chance.  A participant places a wager by purchasing a card, the front of which is preprinted with bingo card patterns and is covered with pull-tabs.  The participant removes the pull-tabs, and if the patterns revealed on the front of the card match the winning patterns preprinted on the back of the card, a prize is payable.  A winning participant collects the prize from a cashier or an usher.

Petitioners each leased premises for the purpose of conducting bingo and "instant bingo" (sometimes referred collectively as bingo activities) and carried on these bingo activities approximately 3 times per week during the years in issue.  Petitioners' bingo activities were not substantially related to their exempt functions or purposes.

Each petitioner maintained a separate checking account (referred to as the bingo account) into which the gross proceeds less prizes paid from bingo activities were deposited.  During the years in issue, petitioners made payments to outside charities from bingo proceeds held in each organization's bingo account.  In addition, FSEP, Schoenstatt, ACADA, and WSA transferred bingo proceeds from their respective bingo accounts into their respective general operating bank accounts (referred to as general accounts or general funds) for their organizations during the years in issue.  Some of these proceeds were paid to third parties during the taxable years in issue.  During the

taxable years 1989 and 1990, FSEP transferred bingo proceeds from its bingo account to a savings account.

Each licensed organization had to disburse a minimum amount of its bingo proceeds for charitable purposes on a quarterly basis. The agency responsible for regulating bingo calculated the quarterly minimum for licensed organizations and notified the organizations of the amount required to be disbursed.

The parties have stipulated the amount of gross receipts received from petitioners' bingo and "instant bingo" activities. The parties also have stipulated the amount of expenses and distributed proceeds attributable to petitioners' "instant bingo" activities based upon the proportion of gross receipts generated by "instant bingo" to the total gross receipts received from petitioners' bingo activities. The gross receipts and expenses attributable to petitioners "instant bingo" activities are set forth in Appendix A and incorporated in these findings of facts. In addition to proceeds from bingo and "instant bingo", WSA received amounts from dauber[3] sales as set forth in Appendix A.

Petitioners' distributions from their bingo accounts and the minimum charitable distribution requirements under Texas law for each petitioner are set forth in Appendix B and incorporated in these findings of facts. In addition to the amounts set forth in Appendix B, in 1989 WSA made payments totaling $1,237.60 from its general account to Kirsten Sotebier for her work as a bookkeeper.

---

[3]     A dauber is an inking device used to mark bingo cards.

Petitioners filed Forms 990, Returns of Organization Exempt from Income Tax, for the years in issue. ACADA and WSA reported using the cash receipts and disbursements method of accounting, and FSEP reported using the accrual method of accounting. On Form 990 filed for the tax year 1989, WSA reported proceeds from dauber sales in the amount of $29,449.11 and from cafeteria sales in the amount of $6,193.99, in addition to proceeds from bingo games.

Petitioners did not file Forms 990T, Exempt Organization Business Income Tax Returns, during the years in issue. In the notices of deficiencies, respondent determined that petitioners were liable for tax on UBTI with respect to petitioners' "instant bingo" activities. Respondent allowed deductions for prizes paid and expenses paid related to petitioners' "instant bingo" activities in computing petitioners' UBTI. Respondent did not allow any deductions for amounts expended or contributed by petitioners for charitable purposes.

The parties agree that the receipts generated by petitioners' "instant bingo" activities constitute UBTI under section 511(a). See Julius M. Israel Lodge of B'nai B'rith No. 2113 v. Commissioner, T.C. Memo. 1995-439, affd. 98 F.3d 190 (5th Cir. 1996). Respondent concedes that petitioners are entitled to deductions under sections 162(a) and 512(a) in computing their

7

UBTI for amounts paid to outside charities or expended for charitable purposes as follows:

WMPI:[4]

| Tax Year Ended | Deduction |
|---|---|
| June 30, 1990 | $5,965 |

FSEP:

| Tax Year Ended | Deduction |
|---|---|
| Dec. 31, 1989 | $1,045 |
| Dec. 31, 1990 | 5,959 |

Schoenstatt:

| Tax Year Ended | Deduction |
|---|---|
| Sept. 30, 1990 | $387 |
| Sept. 30, 1991 | 755 |

ACADA:

| Tax Year Ended | Deduction |
|---|---|
| Dec. 31, 1989 | $5,028 |

WSA:

| Tax Year Ended | Deduction |
|---|---|
| Dec. 31, 1987 | $ 2,462 |
| Dec. 31, 1988 | 7,373 |
| Dec. 31, 1989 | 13,855 |

The amounts conceded by respondent include payments made directly to outside charities and amounts paid from petitioner's general funds which the parties agree are attributable to "instant bingo" proceeds. Respondent also concedes that WSA is entitled to deductions against UBTI under sections 170 and 512(b)(10) in the

---

[4] The parties have stipulated all amounts necessary to compute WMPI's UBTI for the year ended June 30, 1990. No issue remains with respect to WMPI.

amounts of $343, $2,014, and $2,186 for the tax years 1987, 1988, and 1989, respectively.

OPINION

Respondent's determinations are presumed correct, and petitioners have the burden of proving them erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Further, deductions are a matter of legislative grace, and petitioners must prove entitlement to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Taxpayers must maintain adequate records to substantiate the amount of any deductions claimed. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Under section 512(a), each petitioner's UBTI from its "instant bingo" activity is computed as the gross income derived therefrom, less the deductions allowed by Chapter 1 which are directly connected with carrying on this activity, subject to the modifications contained in section 512(b). As relevant here, section 512(b) provides that any deduction allowed under section 170 shall be allowed in computing UBTI, but such deduction is limited to 10 percent of UBTI computed without regard to such deduction. Sec. 512(b)(10).

Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Section 170 allows a deduction for any charitable contribution or gift, as defined therein, paid

9

in the taxable year. In order to be fully deductible under section 512(a), petitioners' claimed items of deduction must qualify for deduction as business expenses under section 162 rather than as charitable contributions under section 170, South End Italian Independent Club, Inc. v. Commissioner, 87 T.C. 168, 175 (1986), and must have a proximate and primary relationship to the carrying on of petitioners' "instant bingo" activities, sec. 1.512(a)-1(a), Income Tax Regs.

The State of Texas authorizes qualified organizations to conduct bingo and "instant bingo" games. Under Texas law, net proceeds from bingo activities must be devoted to "charitable purposes". Tex. Rev. Civ. Stat. Ann. art. 179d, sec. 11(d) (West 1987 & Supp. 1990).[5] Under the Act and the rules and regulations promulgated thereunder, by the end of each quarter an organization must disburse an amount equal to 35 percent of the adjusted gross receipts from the last preceding quarter, less a certain amount of authorized expenses.[6] Renewal of a license may

---

[5] Sec. 11(d) of the Bingo Enabling Act, as effective for the years 1987 through 1989, provided in part: "The net proceeds of any game of bingo * * * shall be exclusively devoted to the charitable purposes of the organization permitted to conduct the game." Tex. Rev. Stat. Ann. art. 179(d), sec. 11(d) (West 1987). In 1990, the sec. was amended to provide in part: "The net proceeds of any game of bingo * * * shall be exclusively devoted to charitable purposes." Tex. Rev. Stat. Ann. art. 179(d), sec. 11(d) (West Supp. 1990).

[6] In 1987, the bingo rules required: "By the end of each quarter, each licensed authorized organization shall disburse for charitable purposes an amount not less than 35 percent of the
(continued...)

be denied if an organization fails to dispose of proceeds in

accordance with the provisions of the Act.  Tex. Rev. Civ. Stat.

---

[6](...continued)
organization's adjusted gross receipts from the last preceding
quarter."  Tex. Admin. Code tit. 34, sec. 3.556 (1987).  The term
"adjusted gross receipts" was defined as gross receipts less the
amount of prizes awarded.  Id.  Effective Jan. 1, 1988, the Rules
were amended.  Sec. 3.556 of the Tex. Admin. Code provided:

> (a)  For the purposes of this section, the term
> "adjusted gross receipts" means gross receipts less the
> amount awarded as prizes.
> (b)  By the end of each quarter, each licensed
> authorized organization shall disburse for charitable
> purposes, an amount not less than 35 percent of the
> organization's adjusted gross receipts from the last
> preceding quarter, less the credits allowed under subsection
> (c) of this section.
> (c)  The amount paid as bingo taxes for the last
> preceding quarter and an amount for basic fixed expenses
> equal to 2.75 percent of the gross receipts for the last
> preceding quarter shall be allowed as a credit towards the
> required 35 percent charitable distribution.

Effective Aug. 21, 1988, sec. 3.556 was repealed, and sec.
3.555 was adopted containing similar terms.  In 1990 this
requirement was codified.

> As effective Jan. 1, 1990, the Act requires that:
> Before the end of each quarter, each licensed authorized
> organization shall disburse for charitable purposes an
> amount not less than 35 percent of the organization's
> adjusted gross receipts from the last preceding quarter,
> less the amount of any credits allowed by rule for bingo
> gross receipts, taxes, and authorized expenses.  For
> purposes of this subsection, adjusted gross receipts means
> gross receipts plus any consideration received from the
> rental of premises for bingo by the authorized organization,
> less the amount of prizes paid in the preceding quarter.  If
> a licensed authorized organization fails to meet the
> requirements of this subsection for a quarter, the
> commission in applying appropriate sanctions may consider
> whether, taking into account the amount required to be
> distributed during that quarter and the three preceding
> quarters and the charitable distributions for each of those
> quarters, the organization has distributed a total amount
> sufficient to have met the 35 percent requirement for that
> quarter and the three preceding quarters combined.

Tex. Rev. Civ. Stat. Ann. art. 179d, sec. 19a(k) (West 1990).

Ann. art. 179d, sec. 13(c)(4) (West 1987 & Supp. 1990). A license may be suspended or revoked for failure to comply with the Act. Tex. Rev. Civ. Stat. Ann. art. 179d, sec. 16(b) & (e) (West Supp. 1990).

The term "charitable purposes" is defined in the Act as one or more causes, deeds, or activities that (1) benefit the needy of Texas by, among other things, promoting their opportunity for religious or educational advancement, relieving disease or suffering, or by contributing to their physical well-being; or (2) initiate, perform or foster public works in Texas. Tex. Rev. Civ. Stat. Ann. art. 179d, sec. 2(9) (West 1987 & Supp. 1990). In addition, the term "charitable purposes" is defined to include organizational and administrative activities that assist the licensed authorized organization in furthering those charitable purposes listed in section 2(9) of the Act provided that the activity relates to a purpose which is consistent with the stated purposes of the organization.[7] Tex. Admin. Code tit. 34, sec. 3.544 (1987, 1988, 1989 & 1990).

Under the Act, a licensed organization is required to establish and maintain one regular checking account designated the "bingo account". Tex. Rev. Civ. Stat. Ann. art. 179d, sec.

---

[7] Expenditures for services rendered and materials purchased for the conduct of bingo by the organization are not considered distributions for charitable purposes. Tex. Admin. Code tit. 34, sec. 3.544 (1987); Tex. Admin. Code tit. 34, sec. 3.544 (1988); Tex. Admin. Code tit. 34, sec. 3.544 (1989); Tex. Admin. Code tit. 34, sec. 3.544 (1990).

19a(a) (West 1987 & Supp. 1990). The Act requires that "All funds derived from the conduct of bingo, less the amount awarded as cash prizes, shall be deposited in the bingo account. No other funds may be deposited in the bingo account."[8] Id. Checks may be drawn on the bingo account for the payment of: necessary expenses and compensation incurred and paid in connection with the conduct of bingo; "the disbursement of net proceeds derived from the conduct of bingo to charitable purposes"; and the transfer of net proceeds derived from the conduct of bingo to a designated bingo savings account pending a disbursement to a charitable purpose. Tex. Rev. Civ. Stat. Ann. art. 179d, sec. 19a(c) (West 1987 & Supp. 1990). The transfer of gross receipts derived from the conduct of bingo to another account maintained by an organization is not permitted except as provided in section 19a(c). Tex. Rev. Civ. Stat. Ann. art. 179d, sec. 19a(f), (g) (West 1987 & Supp. 1990). Gross receipts derived from the conduct of bingo may not otherwise be commingled with other funds of the licensed organization. Id.

FSEP, Schoenstatt, ACADA, and WSA - Substantiation

Although we do not believe the matter to be free from doubt, petitioners and respondent agree that the transfer of bingo proceeds from an organization's bingo account to its general fund

---

[8] In 1990, this section was amended to provide that with prior approval, a licensed organization may lend funds from its general fund to its bingo account. Tex. Rev. Civ. Stat. Ann. art. 179d, sec. 19a(a) (West 1990).

is a charitable disbursement under Texas law.  Based on this proposition, FSEP, Schoenstatt, ACADA, and WSA argue that they are entitled to deductions for all the proceeds from their "instant bingo" activities transferred to their general accounts. Petitioners argue that such transfers are not distinguishable from payments to outside charities.  Petitioners assert that each organization's general funds were used only for exempt purposes. Petitioners argue that these amounts are deductible as business expenses pursuant to sections 162(a) and 512(a).

Respondent counters that in order to be entitled to deductions under sections 162(a) and 512(a), petitioners must establish that any amounts claimed were actually paid from their general fund or account for charitable purposes during the years in issue and that the amounts paid were attributable to "instant bingo" proceeds.  Respondent contends that petitioners have failed to establish that they expended amounts from "instant bingo" proceeds transferred to their general accounts in excess of those stipulated by the parties.

We do not agree with petitioners that a transfer of proceeds from one account of an organization to another account of the same organization is equivalent to a payment to an outside charity for Federal tax purposes, or more precisely for the purposes of sections 162(a) and 512(a).  Whether the transfers qualified as disbursements for purposes of the Texas Act is not dispositive of the Federal tax consequences.  Pursuant to section

461, a deduction allowed by section 162 "shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income."  In the opening brief, respondent asserts that petitioners used the cash basis to determine UBTI.  Petitioners have not objected to respondent's assertion in their reply brief.  However, based on the Forms 990, it appears FSEP used the accrual method of accounting, and we shall decide the issue accordingly.

Section 162 grants a deduction for ordinary and necessary business expenses that are "paid or incurred during the taxable year."  Generally, a cash basis taxpayer may deduct business expenses only in the taxable year in which the expenses are paid.  Sec. 1.461-1(a)(1), Income Tax Regs.  An accrual basis taxpayer generally may deduct expenses in the taxable year in which a liability is incurred.  Sec. 1.461-1(a)(2), Income Tax Regs.  A liability is incurred in the taxable year in which:  (1) All the events have occurred that establish the fact of the liability; (2) the liability can be determined with reasonable accuracy; and (3) economic performance has occurred with respect to the liability.  Id.; sec. 461(h).

We think that the transfer of "instant bingo" proceeds to an organization's general fund is no more deductible than would be a contribution to a reserve for future liabilities.

> the case law has long followed the principle that a
> contribution to a reserve for future liabilities is not
> deductible; only actual payment out of the reserve to

satisfy a definite liability can give rise to a deductible expense. Whether the reserve payments are mandatory is not dispositive of the issue of their deductibility. * * * In Hradesky, we held that a cash basis taxpayer's required payment of real estate taxes in escrow is not a deductible payment until payment out of escrow is made to satisfy the taxpayer's tax liability. Until payment is made of an actual liability that is due, no deductible expense exists. This rule has been followed for more than 60 years. * * *

Sebring v. Commissioner, 93 T.C. 220, 225-226 (1989) (citations omitted).

Sections 162(a) and 512(a) do not allow petitioners to take business expense deductions for funds deposited into their own operating accounts. FSEP, Schoenstatt, and ACADA have not established that they are entitled to deductions with respect to "instant bingo" in excess of amounts allowed by respondent.

WSA has established that it paid $1,237.60 to its bookkeeper during 1989. Respondent argues that WSA has failed to establish that any portion of this amount is allocable to "instant bingo" and that the amount allocable to WSA's tax-exempt income is not deductible. Sec. 265. We find that WSA is entitled to a deduction under sections 162(a) and 512(a) in the amount determined by applying the ratio which WSA's instant bingo proceeds bear to its total gross proceeds to the total fees of $1,237.60.

Excess Contributions

The remaining issue for decision is whether WSA is entitled to deduct as a business expense the entire amount of its payments to outside charities.

Respondent argues that Texas law only requires that 35 percent of net "instant bingo" proceeds from the prior quarter be expended for charitable purposes and that any payments in excess of the 35-percent requirement (excess contributions) were voluntary and not directly connected with petitioners' "instant bingo" activities, and thus are not deductible under sections 162(a) and 512(a).

Petitioners argue that their position is supported by South End Italian Independent Club, Inc. v. Commissioner, 87 T.C. 168 (1986). On the other hand, respondent maintains that this case is distinguishable from South End Italian Independent Club, Inc. with respect to excess contributions.

In South End Italian Independent Club, Inc., the Court considered whether a social club's donations from beano game proceeds were deductible as business expenses in determining UBTI. Massachusetts law provided that the profits from beano "'shall be used for charitable, religious or educational purposes, and shall not be distributed to the members of such organization.'" Id. at 169 (quoting Mass. Gen. Laws Ann. ch. 10, sec. 38 (West 1980). In holding that the donations were not charitable contributions, the Court stated:

> First, petitioner's payments were made in compliance with a Massachusetts law requiring the donation of the "Net Proceeds" of petitioner's beano games. Given the legal compulsion surrounding petitioner's making of the donations, they can hardly qualify as voluntary charitable contributions. * * *

Further, the Club's beano license could be revoked if petitioner were to violate the donation requirement of the Massachusetts Beano Law. Accordingly, obtaining the assurance that its license would not be revoked for failure to comply with that requirement was itself a quid pro quo for the donations. * * *

Id. at 176. The Court held that the donations "were clearly necessary, in the strict sense of the word, to the lawful conduct of beano games by petitioner since they were required by Massachusetts law as a condition to the retention of its license to operate such games." Id. at 177. The donations were held to be currently deductible as ordinary and necessary expenses under section 162 "in the nature of an annually recurring license expense." Id. The taxpayer was allowed a deduction under section 512(a) for the entire amount of donations paid.

Respondent argues that South End Italian Independent Club, Inc. v. Commissioner, supra, is distinguishable based upon the Massachusetts regulations. Respondent argues that it appears that the Court interpreted Massachusetts law as requiring the taxpayer to distribute its entire net proceeds for lawful purposes on an annual basis in order to retain its bingo license.[9] For support, respondent construes the regulations, Mass. Regs. Code tit. 961, sec. 3.05(3)(a)(3)(1980), as providing that the balance of unexpended net proceeds in an organization's

---

[9] As a factual matter, there is some indication that the taxpayer in South End Italian Independent Club, Inc. v. Commissioner, 87 T.C. 168 (1986), did not distribute its entire net proceeds on an annual basis. See id. at 171 & n.3.

beano account could not exceed the lesser of $50,000 or the amount of net proceeds reported on the organization's annual report most recently filed annual report. Respondent argues that the Texas Act is distinguishable in that section 11(d) of the Act does not require that net proceeds be devoted to charitable purposes within a particular taxable year.

In our view, respondent is attempting to narrow the holding of South End Italian Independent Club, Inc. v. Commissioner, supra. Respondent relies on a temporal constraint that is not expressed in the Court's opinion. Further, we do not infer from the Court's opinion that such a requirement was necessarily contemplated. See supra note 9.

In addition, it is clear WSA risked losing its bingo license if it used any part of its net bingo proceeds, above or below the minimum amount, for other than charitable purposes. Respondent contends that an organization's license will not be suspended if the organization makes the minimum charitable disbursements. However, an organization must also comply with section 11(d) of the Act which requires that net proceeds from bingo be devoted to charitable purposes. If the agency responsible for regulating bingo finds that an organization has disbursed funds for a purpose other than for payment of expenses allowed under the Act or for charitable purposes, the agency will issue a "show compliance letter." Administrative actions thereafter may lead to revocation or suspension of such organization's license.

Thus, by making the contributions, WSA obtained the assurance that its bingo license would not be revoked or suspended, and the assurance was quid pro quo for the contributions. See South End Italian Independent Club, Inc. v. Commissioner, supra. The license allowed WSA the privilege of conducting bingo games, a fund raising activity; thus, the organization received an economic benefit in return.

Based on our analysis, WSA's excess contributions qualify for deduction as ordinary and necessary business expenses rather than as charitable donations. Therefore, the excess contributions are deductible under section 162(a). Further, the excess contributions are directly connected to WSA's "instant bingo" activities. We conclude that the payments made by WSA from its bingo account to outside charities are deductible in full under sections 162(a) and 512(a).

To reflect the foregoing and the concessions made by respondent,

Decisions will be entered under Rule 155.